**William Jesse McCOY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–92–00182–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 4, 1994.

William Jesse McCoy, Jr., Houston, pro se.

J. Harvey Hudson, Houston, for appellee.

Before SEARS and LEE, JJ., and WILLIAM E. JUNELL, J., Sitting by Designation.

## OPINION

WILLIAM E. JUNELL, Justice.

This is an appeal of a conviction for felony theft by deception. A jury found appellant McCoy guilty of theft of property in aggregate value of more than $20,000, pursuant to one scheme and continuing course of conduct. The jury assessed McCoy's punishment at ten years, probated for ten years, and a $10,000 fine. The trial court added restitution of $39,900, payable at $350 per month. On appeal, McCoy complains that (1) he was tried on an indictment that was untimely amended, (2) his counsel was ineffective, and (3) evidence should have been suppressed. We reverse.

Since McCoy does not challenge the sufficiency of the evidence, we only briefly summarize the facts in the light most favorable to the verdict. McCoy was purportedly a financial service operator offering loan-arranging services in Houston from 1986 through 1989. He worked with his wife and two sons in the name of McCoy–West Group and Contractor's Financial Service. McCoy–West Group was incorporated in February 1988. McCoy catered to companies needing working capital, real estate investors seeking loans, and start-up business ventures needing capitalization. Clients would pay service fees and out-of-pocket expense reimbursements in amounts ranging from $200 to $3,500.

The jury believed that McCoy was involved in an "advance fee scheme." Having tendered advance fees, clients experienced repeated and continuing delays in getting loans funded. Eventually, clients would give up, go out of business, or secure funding from another source. Rarely, however, would clients get their loan application fees refunded.

In point of error one, McCoy complains that the trial court erred by allowing McCoy to be tried under an amended indictment charging a different offense in violation of Article 28.10(c) of the Texas Code of Criminal Procedure.

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. Tex.Penal Code Ann. § 31.03(a) (Vernon 1989). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). Consent is not effective if induced by deception. *Id.* § 31.01(4)(A). Deception can be "promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed." *Id.* § 31.01(2)(E). Theft is a felony of the second degree if the value of the property stolen is $20,000 or more but less than $100,000. *Id.* § 31.03(e)(5)(B) (Vernon Supp.1994). When property is obtained by theft pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense. *Id.* § 31.09 (Vernon 1989).

On January 25, 1990, an indictment was filed against McCoy. It read in pertinent part:

WILLIAM JESSE McCOY, JR., hereafter styled the Defendant, heretofore on or about the below listed dates, did then and there unlawfully acquire and otherwise exercise control over property, other than real property, namely, MONEY, owned by the below respectively listed owners, each of whom had a greater right to possession of the property than the Defendant, and are hereafter referred to as the Complainants, and in the amounts respectively listed below in an aggregate amount of more than twenty thousand dollars, pursuant to one scheme and continuing course of conduct with the intent to deprive the Complainants of the property, by withholding the property from the Complainants permanently or for so extended a period of time that a major portion of the value or enjoyment of the property was lost to the Complainants and without the effective consent of the Complainants, namely, by deception in that the Defendant represented to the Complainants that the below described monies would be paid to the McCoy WEST GROUP for the McCoy

WEST GROUP to assist the Complainants in obtaining a loan when the Defendant knew the McCoy WEST GROUP would not be of any genuine assistance to the Complainants in obtaining said loan.

[List of twenty-four incidences of theft involving twenty-two complainants, dates, and amounts].

On May 21, 1990, McCoy was reindicted to add six more thefts involving five new complainants.

On November 21, 1990, after a hearing where both McCoy and his counsel were present, the trial court granted a State motion to amend the indictment. The motion stated in pertinent part:

Comes now the State of Texas by and through her undersigned Assistant District Attorney and more than ten (10) days before the trial on the merits moves the Court to amend the instant indictment by deleting the words "... *in that the Defendant represented to the Complainants that the below described monies would be paid to the McCoy WEST GROUP for the McCoy WEST GROUP to assist the Complainants in obtaining a loan when the Defendant knew the McCOY WEST GROUP would not be of any genuine assistance to the Complainants in obtaining said loan.*" and by substituting the new language "... *by the Defendant promising performance that was likely to affect the judgment of the Complainants in a transaction and which the Defendant did not intent [sic] to perform and knew would not be performed.*" in place of the previously deleted language.

The State would further move that additional language be added to the indictment immediately above "... AGAINST THE PEACE AND DIGNITY OF THE STATE ...", namely, "*31. SAMMY GOLDEN 02–15–88 MORE THAN SEVEN HUNDRED AND FIFTY DOLLARS BUT LESS THAN TWENTY THOUSAND DOLLARS.*".

[Emphasis added.]

The trial court granted the State's motion and signed the following order, which was typed on the same sheet of paper as the motion:

*ORDER*

The foregoing State's Order [sic] to Amend the Indictment is hereby GRANTED ... and the indictment *is ... amended* as prayed for.

[Emphasis added.]

On November 26, 1990, McCoy moved for a continuance based in part on the fact that "the District Attorney amended the indictment to include an additional complainant, [as] well as changing the language of the charging instrument." McCoy requested "additional time within which to prepare the defense to the allegations." The trial court granted McCoy's motion, and the trial was not conducted until July 1991.

On July 18, 1991, McCoy was arraigned on the May 21, 1990 indictment, and McCoy pled "not guilty."

On July 23, 1991, after the jury had been sworn, the following dialogue occurred outside the presence of the jury:

THE COURT: I think we have one thing to take up outside the presence of the jury. I think the State has a motion.

THE STATE: Judge, it's come to our attention today than an amendment that had been made to the indictment on November 23rd 1990 entered and signed by Judge Poe had not physically been transferred to the indictment which was in the file and we ask those changes be made today.

THE COURT: All right.

DEFENSE: Your Honor, defendant's position would be this defendant is entitled to be tried based on the allegations handed down by the Harris County grand jury. There's been only one grand jury that has heard evidence upon which they handed down an indictment. That indictment is in the State's file and is the only indictment in the Court's file and defendant is prepared to go forward and answer the allegations in that indictment.

Present also in the file was a motion to amend and I presume that will go with the record in this case. The Court did—Judge Poe did grant the motion permitting the

State to amend the terms and conditions—pardon me, the terms of the indictment.

The defendant contends, however, the State failed to amend the indictment even though granted permission and that the defendant has, in fact, been arraigned by Judge Poe on the old indictment and he is entitled to go forward to answer the allegations on the arraignment, basically the arraignment on the old indictment.

We'd object to the late amendment being entered and being permitted by the Court and would ask that the defendant be allowed to be tried under the indictment as it presently stands.

THE COURT: All right. Anything further then from the State?

THE STATE: Nothing from the State.

THE COURT: I'll grant the State's request and allow the indictment to honor Judge Poe's order that was entered allowing the indictment to be physically amended at this time. Do you have any other requests?

DEFENSE: I do. Solely for the protection of the record, we would—and protection of Mr. McCoy's rights, we would ask we be permitted the ten days that's statutorily ours if, in fact, an amendment occurs.

THE COURT: My interpretation of that is that you don't have a right to an additional ten days. You've already had ten days from the date of the indictment. So, therefore that request will be denied.

\*    \*    \*    \*    \*    \*

DEFENSE: I take it that there is no need to object on the record any further to the arraignment on the indictment as it stands amended?

THE COURT: If you want him arraigned outside the presence of the jury on the indictment as it stands I will do so. I don't think that it's necessary at this time. He's already been arraigned on the indictment, has he not?

DEFENSE: The indictment he was arraigned on was the old indictment, the one that does not include the language permitted to be included by Judge Poe back in November. So, the only arraignment, to

my knowledge, after I got in on the case that the defendant has received has been on the old unamended indictment.

THE COURT: Well, let me just ask you: Your defendant, your client, is familiar with the language and the change in the language, is he not?

DEFENSE: May I ask him?

THE COURT: I can ask him or you can ask him, whatever. Mr. McCoy, there is a little bit different language. Judge Poe signed an order back in 1990. I've forgotten the date, the specific date of the order in which he granted the State leave to amend the indictment's language to read a little bit different way, some language in the indictment, and in the place of that other language was placed—you understand what I'm saying?

McCOY: I understand what you're saying. I'm not sure I understand what the difference was. .

THE COURT: But you understand there was a change made back at that time?

McCOY: I'm being informed right now. I didn't know there had been a change.

THE COURT: All right. But you understand that now, do you not?

McCOY: Yes, sir, I do.

THE COURT: Okay. And do you understand the language that has been changed? If you want me to have the prosecutor read it to you or if you want to take it and read it yourself or you want me to read it to you so that you know the exact language that's contained in the indictment now, I'll be glad to do that.

[The prosecutor then read the material portion of the amended indictment, i.e., the changed explanation of the deception and the added complainant Golden.]

THE COURT: Do you understand that, Mr. McCoy?

McCOY: Yes, sir.

THE COURT: You still enter your plea of not guilty?

DEFENSE: Correct, Your Honor, and just for the protection of the record, we again would reurge our request for ten days and object to the amendment.

THE COURT: Okay. I understand. Overruled. Deny the request. Okay. I believe we're ready to bring the jury in. DEFENSE: We will not object in front of the jury as to the rearraignment on the record, but we do not intend to waive any error or anything of that fashion by not objecting.

When the jury was brought back into the courtroom, the jury heard the reading of the amended indictment and McCoy's "not guilty" plea.

The jury charge contained the amended deception language. However, although the charge included a list of eighteen incidences of theft involving fifteen complainants, the charge did not mention Sammy Golden, the complainant added by the challenged amendment. Golden had not testified at trial, and no evidence was presented relating to that alleged theft.

■ McCoy relies on Article 28.10 of the Code of Criminal Procedure:

**Art. 28.10. Amendment of indictment or information**

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense, or if the substantial rights of the defendant are prejudiced.

TEX.CODE CRIM.PROC.ANN. art. 28.10 (Vernon 1989).

McCoy contends that his indictment was not "amended" for purposes of art. 28.10 until the physical alteration of the face of the indictment. He maintains that the revised deception language and/or the additional complainant amounted to an additional or different offense. McCoy objected to the amendment. Therefore, he argues, the trial court should have denied the late amendment under art. 28.10(c).

We need not decide whether the amendment to McCoy's indictment added a new offense or changed the existing charged offense into a different offense so as to implicate art. 28.10(c). This is so because we find that the amendment was made on the date of trial and related to matters of substance. Article 28.10(b) is dispositive of McCoy's appeal.

### Indictment Amended when Physically Altered

■ It is true that an indictment cannot be amended without leave of the court and under its direction. *Id.* art. 28.11. However, a trial court's order to amend an indictment does not *amend* the indictment; an indictment is not considered amended until the order is acted upon and the indictment physically altered. *Ward v. State*, 829 S.W.2d 787, 793 (Tex.Crim.App.1992). It has been argued that a defendant cannot be sure whether the State has waived or withdrawn its motion to amend until the indictment is physically altered. *See Rent v. State*, 838 S.W.2d 548, 550 (Tex.Crim.App.1992). It is undisputed that the physical alteration of McCoy's indictment did not occur until the first day of his trial after the jury had been sworn.

### Amendment Related to Matters of Substance

■ The amended indictment added a complainant, Sammy Golden. The name of a complaining witness is a matter of substance. *Brown v. State*, 843 S.W.2d 709, 713 (Tex. App.—Dallas 1992, pet. ref'd). In the present case, each complainant was potentially significant in that the State had to prove individual instances of theft aggregating to over $20,000 in order to convict McCoy of a second degree felony as charged. We find that the addition of complainant Golden was a matter of substance.

The State also amended the language describing the manner of deception allegedly perpetrated by McCoy. Lack of effective consent is an element of the offense of theft. TEX.PENAL CODE ANN. § 31.03(b)(1) (Vernon 1989). Consent is not effective if induced by deception. *Id.* § 31.01(4)(A). The language that was amended was descriptive of that which was legally essential to charge a crime. *See Starkey v. State*, 704 S.W.2d 805, 808 (Tex.App.—Dallas 1985, pet. ref'd). The amended deception description was more generic than the original; the amendment opened up the allegations against McCoy to incidents of theft not necessarily involving the McCoy WEST GROUP. We find that the language related to a matter of substance. *See id.*

### McCoy had Right to Veto the Amendment under Art. 28.10(b)

■ The State may not amend an indictment, over a defendant's objection, as to a matter of substance, on the date of a defendant's trial. *Sodipo v. State*, 815 S.W.2d 551, 555–56 (Tex.Crim.App.1990); TEX.CODE CRIM. PROC.ANN. art. 28.10(b) (Vernon 1989). This is true whether the amendment is made before or after the trial commences. *Sodipo, supra.* McCoy objected to the amendment. Therefore, we find that the trial court erred in allowing the State to amend McCoy's indictment as to matters of substance on the date of trial.

### Harm Analysis Inapplicable

■ The Court of Criminal Appeals has held:

[N]o breach of Article 28.10 should be tolerated in the trial court, regardless of its probable effect on the outcome of trial, and ... no speculation about the impact of such an error under Rule 81(b)(2) should be attempted on appeal.

*Brown v. State*, 828 S.W.2d 762, 764 (Tex. Crim.App.1991).

In light of the Court's clear direction, we presume harm and sustain point of error one.

In point two, McCoy contends that the trial court erred by denying McCoy's motion for a ten-day continuance and his motion for a new trial based upon the State's amendment of the indictment. In view of our disposition of point one, point two is moot.

In points three through ten, McCoy complains of ineffective assistance of counsel. Since we will remand the cause for a new trial, these points of error are also moot.

■ In points eleven and twelve, McCoy maintains that the trial court committed reversible error in effectively denying defendant's motion to suppress illegally obtained evidence in violation of the Fourth and Fifth Amendments to the United States Constitution and Article I, §§ 9 and 10 of the Texas Constitution.

McCoy contends that on November 14, 1989, the State's attorney, accompanied by special agents, paid an unannounced visit to his office, rummaged around for about two hours, and carried away ten cartons of client files and checking account records as well as an expandable file folder containing assorted documents. McCoy asserts that, despite persistent requests by his wife, the State's attorney refused to disclose any search warrant, subpoena or other badge of authority suggesting his legal authorization to conduct the abusive and disruptive search and seizure. McCoy complains that (1) the State did not have a search warrant, (2) if it had a warrant, it was not sufficiently specific, (3) if the warrant was sufficiently specific, the law enforcement officers who executed the warrant seized records and documents that were outside the scope of the warrant, and (4) the return was vague and insufficient.

The record is devoid of any hearing or ruling on McCoy's motion to suppress. There is nothing in the record to inform us of the circumstances of the search of McCoy's office, the search's legal justification, or the specific items actually seized. Faced with a silent record, we cannot review McCoy's complaint. In any event, McCoy is free on remand to reurge his motion to suppress. We overrule points eleven and twelve.

In conclusion, having sustained point of error one, we reverse and remand for a new trial.